Jones, Chief Judge,
delivered the opinion of the court:
Plaintiff sues for the value of the use of two vessels which were requisitioned by the defendant for a portion of the war period.
The vessels, the Airdale and the Nellie Juan, were cannery tenders, and prior to requisition plaintiff, who operated a cannery in Alaska, had used them in connection with the salmon fishing and packing business.
On September 6, 1942, the defendant, through the War Shipping Administration, requisitioned the Airdale at Seward, Alaska, for use on a bareboat charter basis. The vessel remained in the possession of defendant until April 22,1943, a period of 227 days and 14 hours during which she was used in Alaskan waters, and at the end of the period was redelivered to plaintiff at Cordova, Alaska..
On a similar basis the Nellie Juan was requistioned September 7, 1942, retained for a period of 226% days in the same area, and redelivered at the same point.
At the time of redelivery, the Airdale needed repairs in the amount of $8,762.73, and the Nellie Juan in the amount of $10,688.01, in order to place these vessels in the same condition as at the time of requisition, less ordinary wear and tear.
On April 2, 1943, the War Shipping Administrator determined that just compensation for the use of the Airdale was $14.31 per day, payable on the first day of each month. He mailed plaintiff an unexecuted bareboat charter on that basis. On May 13,1943, similar action was taken in reference to the Nellie Juan, except that the rate determined was $18.63 per day.
In letters of transmission the plaintiff was requested to execute the charters if the terms were satisfactory.
*574 Plaintiff requested that action on the charters be deferred to a later date. Defendant agreed but indicated that if plaintiff desired it could reject the charters, receive payment of 75 percent of the value as determined, and file claim for the remainder in such sum as it thought necessary to constitute just compensation. There followed correspondence indicating plaintiff was in no hurry to secure final adjustment and compensation, but that it was not satisfied with the rates offered.
During subsequent negotiations plaintiff asked for considerably more than the amount offered, but no settlement was reached and plaintiff has been paid nothing.
The two vessels are described in finding 4. They were combination freight and towing vessels, wooden hull and superstructure, each a little more than 70 feet long, and having a net registered tonnage of 37 and 60 tons, respectively. They were powered with Diesel engines.
The canning season usually lasts from April to mid-September. Ordinarily vessels were out of use from about the middle of September until the following April. It was plaintiff’s custom to send its vessels to Seattle for repair every two or three years, at which time they would be left there until the opening of the next season.
Operations are more hazardous on the Alaskan coast during winter months and the wear and tear above normal on account of extreme weather conditions. There is evidence of only one instance of charter hire of a similar vessel during the winter months and that was at a figure above, the normal rate.
The defendant claims that since they used the vessels only out of season the rate should be less than the in-season rates, and that any damages due to ice and extreme weather conditions are overcome or absorbed by the allowance for repairs and restoration. But damaged machinery, like the bird with the broken pinion, is never quite the same again. Experienced men usually know something of the hazards of their own business, and there seems to have been little effort or desire on the part of the owners of similar vessels to have them used in Alaskan waters out of season. When used at all they were usually sent south. For some reason the plaintiff *575 did not tell us what it received on the two occasions when one of its vessels was sent south for use in sardine fishing.
Apparently the prevailing charter rate for vessels of the class here involved during the 1939 salmon fishing season was from $25 to $45 per day. In 1940 and during the war period it was materially higher. There is little to guide us as to value during the off season.
Considering all the facts set out in detail in our findings and as more fully set out in the transcript, and after eliminating the enhancement due to the causes necessitating the taking, we find that the fair and reasonable hire for the Air-dale was $25 and for the Nellie. Juan $35 per day during the period of defendant’s possession and use, or the sums of $5,689.58 and $7,927.50 respectively.
In its letter of rejection of plaintiff’s claim, dated April 23,1946, defendant agreed to pay the sums claimed by plaintiff for repairs to the vessels, plus the per diem charter hire it had theretofore offered to plaintiff, but no settlement of any kind was made.
Plaintiff is entitled to recover as charter hire the sum of $5,689.58 for the Airdale, and $7,927.50 for the Nellie Juan, plus interest at the rate of four percent per annum on the monthly payments making up such sum from the time such payments became due until July 5, 1943, when the tender under Section-902 of' the Merchant Marine Act of 1936, as amended, was in effect made and declined. The interest thus calculated for the time indicated amounts to $258.71 for the two vessels. After that date it is entitled to interest to date of payment at the rate of four percent per annum on the excess which we have allowed over seventy-five percent of the amount tendered, which excess is $8,016.52,
Plaintiff is also entitled to $8,762.73 for repairs on the Airdale plus interest at the rate of four percent per annum from April 22, 1943, when the .vessel was returned, until May 30, 1944, the date of approval by defendant of the cost of these repairs. Plaintiff is similarly entitled to $10,688.01 for the cost of repairs to the Nellie Juan plus interest at the same rate on this amount from April 22,1943 to November 6, 1945, the approval date of this item. The interest thus calculated on these two items amounts to $1,472.60.
*576 In each of the above instances interest is allowed as a part of just compensation.
Plaintiff claims it should be allowed interest to the date of judgment on the repair items since they are a part of the obligation for the use of the vessels, but all through the record is an indication that plaintiff was not particularly anxious to receive its money when due. No doubt it could have had this money soon after the cost of repairs was approved. At any rate, plaintiff, in so far as the record shows, made little effort to collect these sums. And we think, notwithstanding defendant’s obligation to restore the vessels as a part of the compensation for their taking and use by the defendant, it should not be required to pay interest as a part of just compensation after the approval of the sums, and its willingness to pay these amounts had been disclosed.
In the peculiar state of this record, we cannot go beyond this allowance.
Plaintiff is given judgment for $33,067.82 plus interest of $1,731.31 together with interest on $8,016.52 from July 5, 1943, to date of payment.
Howell, Judge; MaddeN, Judge; Whita.ker, Judge; and LittlbtoN, Judge, concur.